Matter of Levi v New York State Workers' Compensation Bd. (2022 NY Slip Op 06850)

Matter of Levi v New York State Workers' Compensation Bd.

2022 NY Slip Op 06850

Decided on December 1, 2022

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 1, 2022

534264

[*1]In the Matter of David Marlin Levi, Appellant,
v
New York State Workers' Compensation Board, Respondent.

Calendar Date:October 20, 2022

Before: Egan Jr., J.P., Lynch, Aarons, Pritzker and McShan, JJ.

Barnes & Barnes, PC, Melville (Leo K. Barnes Jr. of counsel), for appellant.
Letitia James, Attorney General, Albany (Kathleen M. Treasure of counsel), for respondent.

Lynch, J.
Appeal from a judgment of the Supreme Court (George R. Bartlett III, J.), entered September 14, 2021 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent removing petitioner from the list of authorized medical providers.
Petitioner is a licensed chiropractor who in 1988 was authorized by respondent to render treatment to injured workers pursuant to the Workers' Compensation Law. In 2019, during an investigation of another chiropractor, respondent determined that a supplier of durable medical equipment (hereinafter DME) — Elite Medical Supply of New York, LLC — was making unlawful payments to chiropractors who prescribed Elite's DME to injured workers. Petitioner's name was included among the providers listed on the bills for DME that Elite disclosed to respondent.
As part of the ensuing investigation, respondent requested that petitioner produce, among other things, "any agreement, written or otherwise, with any [DME] supplier." Petitioner produced a written contract he entered into with Elite on January 10, 2018 titled "Services Agreement," pursuant to which plaintiff would be compensated for "[s]ervices in connection with prescribed [d]evices," including fitting patients with Elite's DME and providing instructions on the proper care and use of the DME. Petitioner also provided records reflecting that he received $6,800 from Elite, and the corresponding medical records. Based on this documentation, respondent determined that petitioner was in violation of Workers' Compensation Law §§ 13-d (2) (g), 13-l (10) (g) and 8 NYCRR 29.1 (b) (3), which each prohibit a provider such as petitioner from receiving direct payments from third parties. Under Workers' Compensation Law § 13-f, a provider may only receive payment for services rendered to a workers' compensation claimant from that claimant's employer or the employer's insurance carrier.
In April 2021, respondent informed petitioner of the violation determination, and advised that his name would be removed from the list of providers authorized to render care to injured workers absent a voluntary resignation. In response, petitioner commenced this CPLR article 78 proceeding challenging respondent's decision to remove him from the list of authorized providers. Petitioner sought and obtained a temporary restraining order (hereinafter TRO) from Supreme Court (Ryba, J.) preventing respondent from implementing the removal determination. Thereafter, Supreme Court (Bartlett III, J.) dismissed the petition, finding that respondent's decision was neither an abuse of discretion nor arbitrary and capricious, and lifted the TRO. As relevant here, in reaching that conclusion, the court rejected petitioner's assertion that he was entitled to a hearing prior to respondent's determination. Petitioner appeals.[FN1]
We begin by recognizing that the prohibitions against third-party payments and referral fees set forth in Workers' [*2]Compensation Law § 13-d, which was amended as of January 1, 2020 by substituting the term "providers" for "physicians" in the statute, did not apply to chiropractors at the time petitioner received payments from Elite (see L 2019, ch 55, § 1, part CC, § 2). To the extent that respondent relied on that provision as authority for its determination, such reliance was in error. Respondent, however, also relied on Workers' Compensation Law § 13-l (10) (g) as authority for its removal determination. That said, the essence of petitioner's argument on appeal is that he was statutorily entitled to a hearing pursuant to Workers' Compensation Law § 13-l (10) before any determination was made.
In Matter of Habif v New York State Workers' Compensation Bd. (206 AD3d 1322 [3d Dept 2022]), this Court recently observed that Workers' Compensation Law § 13-l (10) "sets forth a procedural framework that applies when charges of professional misconduct are filed against a provider in furtherance of a midterm removal" (id. at 1323-1324) — which was not the context in Habif. It is the context here. As such, petitioner maintains that he was entitled to a hearing before the chiropractic practice committee (hereinafter CPC) pursuant to Workers' Compensation Law § 13-1 (10). The Board, however, maintains that the chair separately retains the authority to investigate such charges and, "after reasonable investigation," make a determination, without the necessity of a hearing.
Workers' Compensation Law § 13-l (10) begins as follows:
"The [CPC] shall investigate, hear and make findings with respect to all charges as to professional or other misconduct of any authorized chiropractor as herein provided under rules and procedure to be prescribed by the chair and shall report evidence of such misconduct, with their findings and recommendations with respect thereto, to the chair. The findings, decision and recommendation of [the CPC] shall be advisory to the chair only, and shall not be binding or conclusive upon him or her. The chair shall remove from the list of chiropractors authorized to render chiropractic care under [the Workers' Compensation Law] or to conduct independent medical examinations in accordance with [Workers' Compensation Law § 13-l (3) (b)] the name of any chiropractor who he or she shall find after reasonable investigation is disqualified because such chiropractor [committed misconduct as described herein]" (emphasis added).
The directive to "investigate, hear and make findings" establishes the availability of a hearing before the CPC, with the governing rules of procedure set forth in 12 NYCRR 345.4 (Workers' Compensation Law § 13-l [10]). The CPC is required to report its findings and recommendations to the chair, which are advisory only. The chair, in turn, is required to remove a chiropractor from the list of authorized providers who the chair "find[s] after reasonable investigation is disqualified" due to specific misconduct outlined in Workers' Compensation [*3]Law § 13-l (10) (a)-(g) (Workers' Compensation Law § 13-l [10] [emphasis added]).
We recognize that the statutory format set forth under Workers' Compensation Law § 13-l (10) anticipates that both a hearing and report will have been completed by the CPC before the chair renders a decision. That assessment, however, does not end the inquiry, for Workers' Compensation Law § 13-l (12) specifies that the statute does not limit the "power or duty of the chair[] to investigate instances of misconduct, either before or after investigation by the [CPC]." Reading these provisions together, we agree with respondent that the chair has authority independent of the CPC to conduct an investigation, find that the provider is disqualified from rendering care under the Workers' Compensation Law for statutorily specified acts of misconduct and, upon such a finding, remove the provider from the list of authorized chiropractors (see Workers' Compensation Law § 13-l [10], [12]; see also Workers' Compensation Law § 13-l [10] [g]).
This dual-track system is nothing new. In Matter of Sacharoff v Corsi (294 NY 305 [1945], cert denied 326 US 744 [1945]), the Court of Appeals determined that a comparable structure under Workers' Compensation Law § 13-d for revoking a physician's authorization to render medical care to workers established "two concurrent procedures" (id. at 312). The first procedure set forth in subdivision (1) of Workers' Compensation Law § 13-d contemplated a hearing before a medical board or society, while subdivision (2) "contemplate[d] action by [respondent] 'after reasonable investigation'" (id., quoting Workers' Compensation Law § 13-d [2]). That same premise governs the interplay between Workers' Compensation Law § 13-l (10) and (12). In effect, the statute contemplates a hearing before the CPC or an independent determination by respondent.
The question remains whether respondent's review also necessitates a hearing. The last sentence of Workers' Compensation Law § 13-l (12) invokes the provisions of Workers' Compensation Law § 13-d (1) "which are not inconsistent." Not unlike Workers' Compensation Law § 13-l (10), Workers' Compensation Law 13-d (1) provides a structure for different groups to first investigate, hear and report to the chair on charges of professional misconduct. Pertinent here, when a group charged by the chair to investigate a matter fails to timely do so, that context "shall empower the chair to appoint . . . [a] qualified hearing officer to hear and report on the charges to the chair" (Workers' Compensation Law 13-d [1] [emphasis added]). The hearing officer's "findings, decision and recommendation" are "advisory" (Workers' Compensation Law 13-d [1]). The operative term "empower" authorizes the chair to conduct a hearing before rendering a determination. In an instance where questions of fact attend the asserted charges of professional misconduct or incompetency, a hearing would be in order. Here, however, petitioner has admitted [*4]and documented his receipt of payments from Elite for treatment rendered to workers' compensation claimants in direct violation of Workers' Compensation Law § 13-l (10) (g). Under these circumstances, no hearing was warranted and respondent's decision to remove petitioner from the list of authorized providers was not arbitrary and capricious.
Egan Jr., J.P., Aarons, Pritzker and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: In November 2021, petitioner sought a preliminary injunction pending appeal. In December 2021, this Court denied the motion (2021 NY Slip Op 76420[U]).